UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23776-CIV-Moore/Torres

WENDY RUIZ, *et al.,* on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.

GERALD ROBINSON, Florida Commissioner
of Education, sued in his official capacity, and
FRANK T. BROGAN, Chancellor of the State
University System, sued in his official capacity,

        Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Defendants hereby move to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs seek a declaration and injunction precluding Defendants from classifying dependent college and university students as non-residents for tuition purposes, where the parents upon whom they depend cannot provide proof of being legal residents of Florida.

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint on two separate grounds. *First*, Plaintiffs have sued the wrong parties. Defendants do not have enforcement oversight of the college or state university systems or their rulemaking as to who qualifies for in-state tuition rates. Accordingly, Plaintiffs do not present an actual case or controversy and this matter is non-justiciable.

*Second*, Count II does not state a cognizable Supremacy Clause claim under the United States Constitution, and Plaintiffs' ancillary reference to 42 U.S.C. § 1983 does not cure that

fundamental failure. No facts supporting an independent violation of Plaintiffs' rights under federal law have been pleaded that give rise to a claim of Supremacy Clause violation, and no basis arises from the allegations to infer any attempt by any branch of the State of Florida to regulate or otherwise interfere in the areas of immigration and citizenship.

For these reasons, Plaintiffs' Complaint should be dismissed.

## Standards of Review

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff's complaint must be dismissed where, on its face, it fails to allege a basis to support subject matter jurisdiction. *See Levine v. Bellsouth Corp.*, 302 F. Supp. 2d 1358, 1363 (S.D. Fla. 2004). In considering a motion to dismiss pursuant to Rule 12(b)(1), the Court must take the allegations of the complaint as true. *See, e.g.*, *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[1] Nevertheless, "a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). Accordingly, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. S. Bus. Lines, Inc.*, 189 F.2d 219, 221-222 (5th Cir. 1951) ("The jurisdiction of a federal court is never to be presumed, but must be made to affirmatively appear."); *Tanner Advertising Group, LLC v. Fayette County*, 451 F.3d 777, 791 (11th Cir. 2006) (en banc) ("Standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.") (internal quotation marks omitted).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed for failure to state a claim upon which relief can be granted where "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Servs.*, 680 F.2d 103, 104 (11th Cir. 1982). Although a court should accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in his or her favor, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), a plaintiff must do more than merely "label" his or her claims. *See Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996). Moreover, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citation omitted).

## Argument

**I.   NO JUSTICIABLE CASE OR CONTROVERSY ARISES HERE BECAUSE THE PROPER PARTIES ARE NOT NAMED AS DEFENDANTS.**

Plaintiffs have sued the wrong individuals. Neither named Defendant is responsible for the state-level operation, regulation, or enforcement of Florida's non-resident tuition laws and policies effective in Florida's college and university systems. These are enforcement responsibilities of the State Board of Education, Florida Board of Governors, and boards of Florida's colleges and universities, whose members have not been named as party defendants.[2]

---

[2] Defendants are the Commissioner of the Florida Department of Education and the Chancellor of the State University System. Under the Florida State Constitution, the Commissioner is appointed by the State Board of Education, *see* Fla. Const., art. IX, § 2, and is responsible for advising the Board on "all matters pertaining to education," for making recommendations on actions for the Board to take, and for executing actions approved by the Board. Fla. Stat. § 1001.10(2) (2011).

The Eleventh Amendment to the United States Constitution prohibits private citizens from bringing suit against a state in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This prohibition includes suits against state officials where, as here, the state is the real party in interest. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) (a suit against a state official that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief). The State of Florida has not consented to suit in the federal courts. *See* Fla. Stat. § 768.28(18) (2011); *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir 1990). And Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-67 (1989).

A limited exception to the State's sovereign immunity protection exists when a state official is sued for prospective declaratory or injunctive relief to end a continuing violation of federal law. *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception rests on the principle that "an unconstitutional statute is void, and therefore does not impart to the official an immunity from responsibility to the supreme authority of the United States." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (internal citations, quotation marks, and brackets omitted).

Importantly, however, the *Ex parte Young* exception applies only when the named officer has a direct enforcement role with respect to the challenged act, "or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. *See also Fitts v. McGhee*, 172 U.S. 516, 529-30 (1899) (because state officer named held no "special duty" or "special relation" to the particular act alleged to be unconstitutional, claim was barred by Eleventh Amendment immunity); *ACLU v. The Florida Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993) ("Under United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated

4

to enforce that rule who is the proper defendant…."). A generalized duty to enforce state law, or general supervisory power over the persons directly responsible for enforcing the challenged provision, will not subject an official to suit. *See, e.g.*, *Women's Emergency Network v. Bush,* 323 F.3d 937, 949-50 (11th Cir. 2003).

Plaintiffs' Complaint recognizes that the State Board of Education – not the Commissioner of Education – is the "body corporate and the chief implementing and coordinating body of public education in Florida, including the state's community college system, [and] is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes." Complaint ¶ 13; *see also* Fla. Const. art. IX §, 2. Neither Commissioner Robinson nor Chancellor Brogan, the named Defendants, is a member of the seven-member State Board of Education. *See* Fla. Const. art. IX, § 2 (the State Board is responsible to appoint the Commissioner of Education). Moreover, as the Complaint acknowledges, the Florida Board of Governors "operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities [and] is charged with adopting rules to implement Florida's statutes …, including rules to determine the residency status of students for tuition purposes." *Id.* ¶ 14; *see also* Fla. Const. art. IX, § 7(d). Defendant Chancellor Brogan is not a member of the 17-member Florida Board of Governors that runs Florida's University System; and Defendant Commissioner Robinson, as one of 17 members of the Board of Governors, possesses no individual authority to act on behalf of the Board, or unilaterally to adopt rules or enforce the Board's policies. *See* Fla. Const. art. IX, § 7(d); Fla. Stat. § 20.155 (2011).[3]

---

[3] Although the Florida State Constitution provides that the Commissioner sits on the Board of Governors, *see* Fla. Const. art. IX, § 7(d), Plaintiffs have not named the Commissioner in his

In view of the clearly-defined roles of the State Board of Education and the Board of Governors, the Complaint plainly has failed to name proper party defendants.  Because the named Defendants are state officials who cannot adopt rules or enforce Florida's non-resident tuition policies, they are shielded from this action by Eleventh Amendment immunity.  *See, e.g., Women's Emergency Network v. Bush*, 214 F. Supp. 2d 1316, 1318 (S.D. Fla. 2002) (Moore, J.) (concluding that the Governor, as only one of six cabinet members, is not a proper party defendant), *aff'd* 323 F.3d at 949-50 (11th Cir. 2003) ("Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction.").

Moreover, Article III limits the scope of federal judicial power to cases or controversies which require an actual dispute between adverse litigants.  *See United States v. Johnson*, 319 U.S. 302, 305 (1943); *Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002) (per curiam); *Glen v. Club Mediterranee S.A.,* 365 F. Supp. 2d 1263, 1272 (S.D. Fla. 2005), *aff'd,* 450 F.3d 1251 (11th Cir. 2006).  Here, there is no adversity of interests between Plaintiffs and the Defendants named in the Complaint.  Plaintiffs' allegations arise entirely from decisions regarding non-resident tuition policies which neither the Commissioner of Education nor the Chancellor of the State University System has authority to enforce or alter.  Plaintiffs' claims are therefore non-justiciable.  Without an *actual* dispute between *adverse* litigants, this matter does not satisfy the case or controversy requirement of Article III.  *See Johnson*, 319 U.S. at 304.

---

capacity as a member of that Board.  *See* Complaint ¶ 13.  Moreover, naming only a single member of the Board of Governors who possesses no unilateral enforcement authority is insufficient to challenge the enforcement of the Act, which may be done only by naming the full Board.  *See Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003).

Not only are the actions of the named Defendants not the cause of Plaintiffs' alleged harms, the relief sought by Plaintiffs would not redress this harm. *See Koziara v. City of Casselberry,* 392 F.3d 1302, 1304-05 (11th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (requiring for standing purposes a causal connection between the injury and the defendants' conduct, and a likelihood that a favorable ruling would redress the alleged injury). "Absent a redressable injury a judicial determination of plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement." *Glen*, 365 F. Supp. 2d at 1272 (citing *Church v. City of Huntsville,* 30 F.3d 1332, 1335 (11th Cir. 1994)). In "the absence of a genuine adversary issue between the parties," this case is non-justiciable. *Johnson,* 319 U.S. at 304.[4]

Whereas Commissioner Robinson and Chancellor Brogan do not possess authority over Florida's non-resident tuition policy, the State Board and the Board of Governors possess broad authority to regulate almost every aspect of the management of the state's colleges and universities. *See, e.g., Fla. Pub. Employees Council 79 v. Pub. Employees Relations Comm'n*, 871 So. 2d 270, 274-75 (Fla. 1st DCA 2004) ("[A]s of the effective date of article IX, section 7, which was January 7, 2003, the Board of Governors was the entity that was 'fully responsible for

---

[4] Plaintiffs also seek declaratory relief pursuant to the Declaratory Judgment Act, which provides that a declaratory judgment may be issued only in situations where the litigants have presented an "actual controversy." 28 U.S.C. § 2201; *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985); *see also Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) (noting that declaratory relief is appropriate only when there is "a substantial continuing controversy between two adverse parties"); *Sullivan v. Div. of Elections*, 718 F.2d 363, 365 (11th Cir. 1983) ("A district court can grant declaratory relief only if there is a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests.") (internal quotation marks and citations omitted).

the management of the whole university system.'") (citing Fla. Const. art. IX, § 7).[5] Florida's Constitution, statutes, and case precedent all demonstrate that neither the Commissioner nor the Chancellor is responsible for enforcing, nor can either of them alter, non-resident tuition policies at Florida's colleges and universities. Because the harms that Plaintiffs allege are not "fairly traceable" to actions of the named Defendants, Plaintiffs lack standing to invoke the jurisdiction of this Court. *See Doe v. Pryor*, 344 F.3d 1282, 1285 (11th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003).[6]

## II.  COUNT II DOES NOT STATE A COGNIZABLE SUPREMACY CLAUSE CLAIM.

Additionally, should the Court reach the issue of whether the pleadings otherwise are legally sufficient, Defendants further move to dismiss Count II for failure to state a claim.

The gist of Count II is that the Defendants' alleged "policy and practice of classifying dependent United States citizen students who reside in Florida as 'non-residents' based on their parents' federal immigration status violates the Supremacy Clause[,]" Complaint ¶ 54, and entitles them to relief under 42 U.S.C. § 1983, Complaint ¶ 56. However, these are merely conclusory allegations, devoid of support in law or reason.

---

[5] In *NAACP v. Fla. Bd. of Regents*, 876 So. 2d 636 (Fla. 1st DCA 2004), the court emphasized the respective constitutional roles of the Board of Governors and the State Board of Education, noting that "authority over the university system has been transferred by article IX, section 7, to the Board of Governors" and that "the State Board of Education under article IX, section 2 ... remains responsible for … community college education." *Id.* at 639-40.

[6] In *Doe v. Pryor*, the Eleventh Circuit held that a plaintiff lacked standing to challenge the constitutionality of a state statute because the only party that she sued, the state attorney general, conceded that the challenged statute could not and would not be enforced by him. 344 F.3d at 1285. The court stated that even if the plaintiff had sufficiently alleged that she was injured, these "injuries are not fairly traceable to the Alabama Attorney General and they cannot be redressed through this action against him." *Id.*; *see also Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005).

It is settled that the Supremacy Clause, Article VI, clause 2 of the United States Constitution, does not in itself create any private cause of action, including any cause of action under section 1983. The United States Supreme Court made this abundantly clear in *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989), where it stated:

> Respondent argues that the Supremacy Clause, of its own force, does not create rights enforceable under § 1983. We agree. "[T]hat clause is not the source of any federal rights"; it "'secure[s]' federal rights by according them priority whenever they come in conflict with state law." [Citations omitted.]

*Golden State Transit*, 493 U.S. at 106 (citations omitted). Thus, mere invocation of the Supremacy Clause is insufficient to state a claim of rights that are enforceable under section 1983 or otherwise. Any such rights must be shown to originate elsewhere.

.Likewise, section 1983 does not itself give rise to a private remedy. Rather, it provides a remedy to vindicate rights created by *other* sources under federal law. In *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), the Supreme Court – rejecting the claim that the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, created enforceable personal rights under section 1983 – stated:

> Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983. But the initial inquiry – determining whether a statute confers any right at all – is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute "confer[s] rights on a particular class of persons. … This makes obvious sense, since § 1983 merely provides a mechanism for enforcing individual rights "secured" elsewhere, *i.e.*, rights independently "secured by the Constitution and laws" of the United States. "[O]ne cannot go into court and claim 'a violation of § 1983' – for § 1983 by itself does not protect anyone against anything.

*Gonzaga Univ.*, 536 U.S. at 284-85 (citations omitted).

Moreover, even where federal preemption can be shown, it does not necessarily follow that a claim arises under section 1983.  The Court in *Golden State Transit* further noted:

> Given the variety of situations in which preemption claims may be asserted, in state court and in federal court, it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law preempts state regulatory authority.

*Golden State Transit*, 493 U.S. at 107-08.

In the case at bar, Plaintiffs in Count II cite no basis other than section 1983 to predicate their Supremacy Clause claim.  Beyond that, they merely assert without support that the areas of immigration and citizenship are "exclusively vested in the federal government," while also failing to connect any sort of federal preemption to their claim.  In these regards, Count II fails to state a cause of action.

Moreover, even if even if federal law completely preempted state law in the areas of immigration and citizenship, Count II nevertheless would fail to state a claim because no reasonable inference arises that any Defendant, or the State of Florida in any other capacity, has interfered in any way with immigration or citizenship.  No federal law or foreign policy is implicated.  No barrier to entry into Florida is claimed to exist.  No impact on commerce between any person or company in Florida and any person or company in any foreign nation is alleged.  Indeed, the allegations attest to the fact that Plaintiffs already are *here* in Florida, and have resided here for several years.  And whatever other ramifications may attend their parents' lack of documentation to show their own entitlement to be here, the allegations further attest to the parents' presence in Florida.

Thus, Plaintiffs' Supremacy Clause claim is unsupported in law and is contrary to logic and common sense, warranting its dismissal.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiffs' Complaint should be dismissed.

Respectfully submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL OF FLORIDA**

Charles Deal
General Counsel
Florida Department of Education
1244 Turlington Building
Tallahassee, Florida 32399-0400
(850) 245-0442; (850) 245-9379 (facsimile)
charles.deal@fldoe.org

Vikki Shirley
General Counsel
Florida Board of Governors
1614 Turlington Building
Tallahassee, Florida 32399-0400
(850) 245-0466
vikki.shirley@flbog.edu

/s/ Blaine H. Winship
Blaine H. Winship (FBN 0356913)
Special Counsel
Timothy D. Osterhaus (FBN 0133728)
Deputy Solicitor General
Office of the Attorney General of Florida
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Email: blaine.winship@myfloridalegal.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of January, 2012, a true and correct copy of the foregoing Defendants' Motion to Dismiss the Complaint and Memorandum of Points and Authorities in Support was served, by first class mail, electronic service, and through the Court's Notice of Electronic Filing system, upon the all counsel of record for all Plaintiffs, as follows:

Jerri K. Katzerman, Esq.
Southern Poverty Law Center
400 Washington Avenue
Montgomery, AL  36104
Tel. (334) 956-8320
Email: jerri.katzerman@splcenter.org

Maria V. Morris, Esq.
Southern Poverty Law Center
400 Washington Avenue
Montgomery, AL   36104
Tel. (334) 956-8320
Email: maria.morris@splcenter.org

Tania Galloni, Esq.
Southern Poverty Law Center
4770 Biscayne Boulevard, Suite 760
Miami, FL   33137
Tel. (305) 537-0573
Fax: (786) 237-2949
Email: tania.galloni@splcenter.org

Miriam Fahsi Haskell, Esq.
Southern Poverty Law Center
4770 Biscayne Boulevard, Suite 760
Miami, FL   33137
Tel. (786) 472-2056
Email: mirian.haskell@splcenter.org

/s/ Blaine H. Winship
Blaine H. Winship
Special Counsel
Office of the Attorney General of Florida
The Capitol, Suite PL-01
Tallahassee, Florida 32399-1050
Tel.: (850) 414-3300
Fax: (850) 488-4872
Email: blaine.winship@myfloridalegal.com