**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| WENDY RUIZ; NOEL SAUCEDO; | ) | |
| CAROLINE ROA; KASSANDRA | ) | |
| ROMERO; and JANETH AMERICA | ) | |
| PEREZ, on behalf of themselves and | ) | |
| all others similarly situated, | ) | Civil Case No. 1:11-cv-23776-KMM |
| | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GERARD ROBINSON, Florida | ) | |
| Commissioner of Education, sued | ) | |
| in his official capacity; KATHLEEN | ) | |
| SHANAHAN, sued in her official | ) | |
| Capacity; ROBERTO MARTINEZ, | ) | |
| sued in his official capacity; SALLY | ) | |
| BRADSHAW, sued in her official | ) | |
| capacity; GARY CHARTRAND, sued | ) | |
| in his official capacity; A.K. DESAI, | ) | |
| sued in his official capacity; | ) | |
| BARBARA S. FEINGOLD, sued | ) | |
| in her official capacity; | ) | |
| JOHN R. PADGET, sued in his official | ) | |
| capacity; FRANK T. BROGAN, | ) | |
| Chancellor of the State University System, | ) | |
| sued in his official capacity; | ) | |
| DEAN COLSON, sued in his official | ) | |
| capacity; MORTEZA "MORI" | ) | |
| HOSSEINI, sued in his official | ) | |
| capacity; RICHARD A. BEARD III, | ) | |
| sued in his official capacity; | ) | |
| JOSEPH L. CARUNCHO, sued in his | ) | |
| official capacity; CHRIS CORR, sued in | ) | |
| his official capacity; PATRICIA FROST, | ) | |
| sued in her official capacity; | ) | |
| THOMAS G. KUNTZ, sued in his | ) | |
| official capacity; MICHAEL LONG, | ) | |
| sued in his official capacity; | ) | |
| AVA L. PARKER, sued in her | ) | |
| official capacity; TICO PEREZ, sued | ) | |

in his official capacity; JOHN ROOD,      )
sued in his official capacity;            )
GUS A. STAVROS, sued in his               )
official capacity; JOHN W. TEMPLE,        )
sued in his official capacity;            )
NORMAN D. TRIPP, sued in his official     )
capacity; and RICHARD A. YOST,            )
sued in his official capacity,            )
                                          )
        Defendants.             )
_____)

## <u>AMENDED COMPLAINT – CLASS ACTION</u>

1.      This action challenges the policies of the Florida State Board of Education and the Florida Board of Governors that treat United States citizen students who reside in Florida as "non-residents" solely because their parents are undocumented immigrants. These policies invidiously discriminate against such United States citizen students in violation of the United States Constitution.

2.      Florida's public colleges and universities classify applicants and students who are unable to show that their parents have lawful immigration status as "non-residents," even though the applicants are United States citizens who reside in Florida. Being classified as a non-resident more than triples the cost of tuition. As a result, many talented American students must either forego higher education or incur extraordinary costs, in both money and time, in order to obtain the same education made available to other Florida residents at a small fraction of the cost.

3.      The individuals who bring this action were born in the United States, graduated from Florida high schools, and have lived in Florida for many years. Some have lived in Florida all of their lives. They went to the same high schools, held down the same part-time jobs, and participated in the same after-school activities as their counterparts who are granted in-state tuition status. The only difference between the plaintiffs and the students granted in-state tuition

is that the plaintiffs cannot prove that their parents have lawful immigration status. Defendants' actions violate fundamental constitutional rights. Plaintiff students seek declaratory, injunctive, and equitable relief on behalf of themselves and all others similarly situated.

## PARTIES

### PLAINTIFFS

4.     Plaintiff **WENDY RUIZ** is a United States citizen who was born in Miami, Florida, in 1992, and lives with her parents in Miami-Dade County. Wendy has a Florida birth certificate, a Florida high school diploma, a Florida voter's registration card, a Florida bank account, a Florida learner's license, and other proof of her continuous residence in Florida. Wendy is an honors student in her second year at Miami Dade College. Wendy, however, is classified as a "non-resident" based on the inability to show proof of her parents' lawful immigration status. As a result of being charged the higher "non-resident" tuition rate, Wendy cannot afford to take a full course load and will need three years to complete her two-year degree at Miami Dade College.

5.     In January 2010, Wendy tried to enroll at Florida International University ("FIU"), located in Miami, Florida. FIU's online application process required Wendy to provide information about her parents' lawful immigration status, a requirement she could not meet. When Wendy was unable to provide this information, FIU's application did not permit her to proceed, and she was therefore unable to enroll in the university.

6.     Plaintiff **NOEL SAUCEDO** is a United States citizen who was born in Miami, Florida, in 1991, and lives with his parents in Miami-Dade County. Noel has a Florida birth certificate, a Florida driver's license, a Florida bank account, and a Florida high school diploma. Noel is a second-year student at Miami Dade College and has resided in Florida since 2006. In

3

the spring of 2010, Noel was awarded a full scholarship for the two-year program at Miami Dade College. Unable to show his parents' lawful immigration status, however, Noel was classified as a "non-resident," thereby requiring him to pay the higher tuition rate and reducing his scholarship to a negligible amount.   As a result of being charged the higher "non-resident" tuition rate, Noel cannot afford to take a full course load and will need three years to complete his two-year degree at Miami Dade College.

7.     On or around March 2010, Noel tried to enroll at Florida International University ("FIU"), located in Miami, Florida.  FIU's online application process required Noel to provide information about his parents' lawful immigration status, a requirement he was not able to meet. When Noel was unable to provide this information, FIU's application did not permit him to proceed, and he was therefore unable to enroll in the university.

8.     Plaintiff **CAROLINE   ROA** is a United States citizen who was born in Miami, Florida, in 1993 and has lived in Miami-Dade County her entire life.  Caroline lives with her sister in Miami-Dade County, where her only living parent, her father, also lives.  Caroline has a Florida birth certificate, a Florida high school diploma, a Florida voter's registration card, a Florida bank account, and other proof of her continuous residence in Florida.  She aspires to study psychology and work for the Federal Bureau of Investigation.

9.     On or around August 2011, after Caroline was accepted to Miami Dade College, school officials informed her that she did not qualify for in-state tuition, even though she had resided in Miami-Dade County since birth.  School officials explained to Caroline that her residency for tuition purposes was based on her father's legal residence.  Because Caroline could not show proof of her father's legal immigration presence in the United States, she could not qualify for in-state tuition rates.   Unable to afford non-resident tuition rates, Caroline has not

4

enrolled in college.    Instead, she works two jobs in the hope of one day being able to afford college.

10.     Plaintiff **KASSANDRA ROMERO** is a United States citizen who was born in Los Angeles, California, in 1993, and lives with her family in Palm Beach County, Florida. Kassandra has resided in Florida with her family since 1998.    She has a California birth certificate, a Florida high school diploma, a Florida driver's license, and other proof of her continuous residence in Florida.   Although Kassandra registered for classes at Palm Beach State College, in June 2011, school officials informed her that she would have to show proof of her parents' legal immigration status in order to qualify for in-state tuition rates. Unable to meet that requirement and unable to afford non-resident tuition rates, Kassandra withdrew from college. She currently works at a restaurant.

11.     Plaintiff **JANETH AMERICA  PEREZ**  is a United States citizen who was born in Miami, Florida, in 1992.  She has a Florida birth certificate, a Florida high school diploma, a Florida driver's license, and other proof of her continuous residence in Florida.     Janeth lives with her mother in Homestead, Florida. She has resided in Florida her entire life.  Janeth applied and was accepted to Miami Dade College, where she intended to study to become an earth science teacher.  If able to complete her education and become a teacher, Janeth plans to teach in her home state of Florida.

12.     Upon enrolling at Miami Dade College, Janeth was classified as an out-of-state student because she was unable to show documentation of her mother's immigration status. Because of the higher costs of out-of-state tuition, Janeth was forced to drop her classes and currently works at a plant nursery.

**DEFENDANTS**

13.     Defendant **GERARD ROBINSON** is the Florida Commissioner of Education
and a member of the Florida Board of Governors. The Commissioner is the Executive Director
of the Department of Education and is the chief educational officer for the state of Florida. Fla.
Stat. §§ 20.15(2), 1001.10(1). He is "responsible for giving full assistance to the State Board of
Education in enforcing compliance with the mission and goals of the K-20 education system"
which includes Florida's public colleges.  Fla. Stat. § 1001.10(1).  Florida's K-20 system
includes the state's 28 community colleges (also known as the "Florida College System"), of
which Miami Dade College and Palm Beach State College are a part.   The Florida State Board
of Education, a division of the Department of Education, is a body corporate and the chief
implementing and coordinating body of  public education in  Florida, including the  state's
community college system.  The Florida State Board of Education oversees the adoption and
enforcement of all laws and rules related to Florida's public K-20 education system.   It is
statutorily charged with adopting rules to determine the residency status of community college
students for tuition purposes. Fla. Stat. § 1009.21(13). The Commissioner must "[i]ntegrally
work with the boards of trustees of the Florida College System institutions" to ensure the State
Board of Education's policies are implemented.  Fla. Stat. § 1001.11(1)(d).      Defendant
Robinson is sued in his official capacity.

14.     Defendant **KATHLEEN SHANAHAN** is Chair of the Florida State Board of
Education. As chair, Defendant Shanahan presides over meetings and operations of the state
board. The Florida State Board of Education, a division of the Department of Education, is a
body corporate and the chief implementing and coordinating body of public education in Florida,
including the state's community college system. The Florida State Board of Education oversees

6

the adoption and enforcement of all laws and rules related to Florida's K-20 public education system. It is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Shanahan is sued in her official capacity.

15.     Defendant **ROBERTO MARTINEZ** is a member and Vice Chair of the Florida State Board of Education. As a member, Defendant Martinez participates in meetings and decision-making affecting operations of the state board. The Florida State Board of Education, a division of the Department of Education, is a body corporate and the chief implementing and coordinating body of public education in Florida, including the state's community college system. The Florida State Board of Education oversees the adoption and enforcement of all laws and rules related to Florida's public K-20 education system. It is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Martinez is sued in his official capacity.

16.     Defendant **SALLY BRADSHAW** is a member of the Florida State Board of Education. As a member, Defendant Bradshaw participates in meetings and decision-making affecting operations of the state board. The Florida State Board of Education, a division of the Department of Education, is a body corporate and the chief implementing and coordinating body of public education in Florida, including the state's community college system. The Florida State Board of Education oversees the adoption and enforcement of all laws and rules related to Florida's public K-20 education system.  It is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Bradshaw is sued in her official capacity.

17.     Defendant **GARY CHARTRAND** is a member of the Florida State Board of Education. As a member, Defendant Chartrand participates in meetings and decision-making affecting operations of the state board. The Florida State Board of Education, a division of the Department of Education, is a body corporate and the chief implementing and coordinating body of public education in Florida, including the state's community college system. The Florida State Board of Education oversees the adoption and enforcement of all laws and rules related to Florida's public K-20 education system. It is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Chartrand is sued in his official capacity.

18.     Defendant **A.K. DESAI** is a member of the Florida State Board of Education. As a member, Defendant Desai participates in meetings and decision-making affecting operations of the state board. The Florida State Board of Education, a division of the Department of Education, is a body corporate and the chief implementing and coordinating body of public education in Florida, including the state's community college system. The Florida State Board of Education oversees the adoption and enforcement of all laws and rules related to Florida's public K-20 education system. It is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Desai is sued in his official capacity.

19.     Defendant **BARBARA S. FEINGOLD** is a member of the Florida State Board of Education. As a member, Defendant Feingold participates in meetings and decision-making affecting operations of the state board. The Florida State Board of Education, a division of the Department of Education, is a body corporate and the chief implementing and coordinating body of public education in Florida, including the state's community college system. The Florida State

Board of Education oversees the adoption and enforcement of all laws and rules related to Florida's public K-20 education system. It is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Feingold is sued in her official capacity.

20.     Defendant **JOHN R. PADGET** is a member of the Florida State Board of Education. As a member, Defendant Padget participates in meetings and decision-making affecting operations of the state board. The Florida State Board of Education, a division of the Department of Education, is a body corporate and the chief implementing and coordinating body of public education in Florida, including the state's community college system. The Florida State Board of Education oversees the adoption and enforcement of all laws and rules related to Florida's public K-20 education system. It is statutorily charged with adopting rules to determine the residency status of community college students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Padget is sued in his official capacity.

21.     Defendant **FRANK T. BROGAN** is Chancellor of the State University System. As Chancellor, Defendant Brogan leads the Florida Board of Governors and serves as the chief executive and administrative officer of the State University System.  Florida statute provides that "[t]he Board of Governors may appoint a Chancellor to aid the board in the implementation of its responsibilities" as they relate to Florida's public universities.  Fla. Stat. §20.155(3). The Florida Board of Governors consists of 11 public universities in the State of Florida, including  Florida International University.  The Florida Board of Governors operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities.   The Board of Governors is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of

students for tuition purposes. Fla. Stat. § 1009.21(13). The Chancellor of the State University System consults with the Commissioner of Education to establish statewide K-20 advisory groups and the Articulation Coordinating Committee, which makes recommendations related to statewide policies on admissions, articulation, and other matters affecting the State University System.  Defendant Brogan is sued in his official capacity.

22.     Defendant **DEAN COLSON** is Chair of the Florida Board of Governors. As chair, Defendant Colson oversees meetings and participates in decisions affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Colson is sued in his official capacity.

23.     Defendant **MORTEZA "MORI" HOSSEINI**  is Vice Chair of the Florida Board of Governors. As vice chair, Defendant Hosseini participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including

rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Hosseini is sued in his official capacity.

24.     Defendant **RICHARD A. BEARD, III**, is a member of the Florida Board of Governors. As a member, Defendant Beard participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Beard is sued in his official capacity.

25.     Defendant **JOSEPH L. CARUNCHO** is a member of the Florida Board of Governors. As a member, Defendant Caruncho participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Caruncho is sued in his official capacity.

26.     Defendant **CHRIS CORR** is a member of the Florida Board of Governors. As a member, Defendant Corr participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Corr is sued in his official capacity.

27.     Defendant **PATRICIA FROST** is a member of the Florida Board of Governors. As a member, Defendant Frost participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Frost is sued in her official capacity.

28.     Defendant **THOMAS G. KUNTZ** is a member of the Florida Board of Governors. As a member, Defendant Kuntz participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for

the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Kuntz is sued in his official capacity.

29.     Defendant **MICHAEL LONG** is a member of the Florida Board of Governors and chair of the Florida Student Association. As a member of the Florida Board of Governors, Defendant Long participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Long is sued in his official capacity.

30.     Defendant **AVA L. PARKER** is a member of the Florida Board of Governors. As a member, Defendant Parker participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board

of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Parker is sued in her official capacity.

31.    Defendant **TICO PEREZ** is a member of the Florida Board of Governors. As a member, Defendant Perez participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Perez is sued in his official capacity.

32.    Defendant **JOHN ROOD** is a member of the Florida Board of Governors. As a member, Defendant Rood participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the

residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Rood is sued in his official capacity.

33.     Defendant **GUS A. STAVROS** is a member of the Florida Board of Governors. As a member, Defendant Stavros participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Stavros is sued in his official capacity.

34.     Defendant **JOHN W. TEMPLE** is a member of the Florida Board of Governors. As a member, Defendant Temple participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Temple is sued in his official capacity.

35.     Defendant **NORMAN D. TRIPP** is a member of the Florida Board of Governors. As a member, Defendant Tripp participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Tripp is sued in his official capacity.

36.     Defendant **RICHARD A. YOST** is a member of the Florida Board of Governors. As a member, Defendant Yost participates in meetings and decision-making affecting operations of the board, which operates, regulates, controls, and is fully responsible for the management of Florida's entire system of public universities. The Florida Board of Governors consists of 11 public universities in the State of Florida, including Florida International University. The Board of Governors, which "has responsibility for compliance with state and federal laws, rules, regulations, and requirements," Fla. Stat. § 1001.706(8), is charged with adopting rules to implement Florida's statutes as to the State University System, including rules to determine the residency status of students for tuition purposes. Fla. Stat. § 1009.21(13). Defendant Yost is sued in his official capacity.

## JURISDICTION AND VENUE

37.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and laws of the United

States, and pursuant to 28 U.S.C. § 1343 because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' civil rights and to secure equitable or other relief for the violation of those rights.

38.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57. Venue is proper under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida.  Each one of the class representatives lives in the Southern District of Florida, applied to colleges or universities operating in the Southern District of Florida, and was deemed not to be a Florida resident for tuition purposes in the Southern District of Florida.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring this action on behalf of themselves and all those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

40.     The class is defined as:

> All past, present, and future United States citizens who are, were, or will be able to establish Florida residency for purposes of determining in-state tuition rates at Florida public institutions of higher learning but for their parents' immigration status at the time of the application to or matriculation in such institutions.

41.     The class meets all the requirements of Rule 23(a).  Although the precise size of the class cannot be determined at this time, statistical evidence shows that the class is so numerous that joinder of all members is impracticable.

42.     Roughly 4.5 million U.S.-born citizens of unauthorized immigrant parents live in the United States. Pew Hispanic Center, Unauthorized Immigrant Population:  National and State   Trends,      2010,   at      13,     Feb.1, 2011, http://pewhispanic.org/files/reports/

133.pdf.  Approximately 825,000 unauthorized immigrants reside in Florida alone.  *Id.* at 14. Moreover, the children of unauthorized immigrants make up 6.8% of the students enrolled in the nation's elementary and secondary schools.    Pew Hispanic Center, A Portrait of Unauthorized   Immigrants   in   the   United   States,   April   14,   2009,   at   i, http://pewhispanic.org/files/reports/107.pdf.

43.    There are questions of law or fact common to the class, including:  (1) whether Defendants' policy and practice of requiring a Florida resident to show proof of his or her parents' legal immigration status in order to establish residency for the purpose of in-state tuition violates the Equal Protection Clause of the United States Constitution; and (2) whether Defendants' policy and practice are preempted by the United States Constitution and federal law. These questions predominate over any questions affecting only the individual plaintiffs.

44.    Plaintiffs' claims are typical of the claims of the class because Defendants' policy and practice of denying in-state tuition rates to United States citizen children who reside in Florida based on their parents' immigration status applies with equal force to the proposed class.

45.    Plaintiffs will fairly and adequately represent the interests of all members of the proposed class because they seek relief on behalf of the class as a whole and have no interests antagonistic to other members of the class.  Plaintiffs are represented by counsel with extensive expertise in class action litigation, including litigation regarding constitutional law.

46.    Finally, Defendants have acted and will act on grounds generally applicable to the class in creating and implementing the policy and practice of denying in-state tuition to United States  citizen  children  of  undocumented  immigrants,  thereby  making  appropriate  final declaratory relief with respect to the class as a whole.

## LEGAL FRAMEWORK

47.     Florida Statutes Section 1009.21 provides for the classification of students as residents or non-residents for the purpose of assessing tuition in institutions of post-secondary education, including Florida colleges and universities.

48.     Under Section 1009.21, "legal resident" or "resident" is defined as "a person who has maintained his or her residence in this state for the preceding year, has purchased a home which is occupied by him or her as his or her residence, or has established a domicile in this state pursuant to s. 222.17." Fla. Stat. § 1009.21(1)(d).  The statutory definition of "legal resident" or "resident" does not mention immigration status.

49.     Section 1009.21 defines a "dependent child" as "any person, whether or not living with his or her parent, who is eligible to be claimed by his or her parent as a dependent under the federal income tax code."   Fla. Stat. § 1009.21(1)(a).  Dependent students are those who are under age 24 and claimed as dependents on their parents' tax returns, if filed.  A student younger than 24 may be classified as independent if the student is married, the student has his or her own dependents, or the student served in the United States military.   See Guidelines on Florida Residency      for      Tuition      Purposes,      §      3.1      (Oct.      27,      2010), http://files.facts.usf.edu/pdfDocuments/manuals/Residency_Guidelines_October_2010.pdf.

50.     For a dependent child to qualify as a resident for tuition purposes, "his or her parents must have established legal residence in this state and must have maintained legal residence in this state for at least 12 consecutive months immediately prior to his or her initial enrollment in an institution of higher education." Fla. Stat. § 1009.21(2)(a)(1). The statute does not require any information relative to the parents' federal immigration status.

51.     An applicant for admission need only "make a statement as to his or her length of residence in the state" and "establish that his or her presence or, if the applicant is a dependent child, the presence of his or her parents in the state currently is, and during the requisite 12-month qualifying period was, for the purpose of maintaining a bona fide domicile, rather than for the purpose of maintaining a mere temporary residence or abode incident to enrollment in an institution of higher education." Fla. Stat. § 1009.21(2)(a)(2).

52.     Florida Statutes Section 1009.21(13) directs the Florida State Board of Education and the Florida Board of Governors to adopt rules to implement the statutory law regarding the determination of resident status for tuition purposes.

53.     The Florida State Board of Education's administrative rule governs residency determinations for the Florida College System's community colleges. F.A.C. § 6A-10.044.

54.     The Florida Board of Governors' administrative rule governs residency determinations for the State University System. F.A.C. § 72-1.001.

55.     These administrative rules require that a non-United States citizen seeking to establish Florida residency for tuition purposes present "evidence . . . verifying that he or she is legally present in the United States."  F.A.C. §§ 6A-10.044(4) and 72-1.001(5).  If the student is a dependent, the parent must present evidence of the parent's legal immigration status. F.A.C. § 72.1-001(5)(a)(3).

56.     The rules further provide that both the student "and parent if the student is a dependent, must present evidence of legal presence in the United States."  F.A.C. §§ 6A-10.044(4)(a), 72-1.001(5)(a)3 and (5).

57.     Miami Dade College's policy, for example, provides that "non-U.S. citizen students and/or parents must provide evidence of eligible legal immigration status in the U.S.

20

before being considered for Florida resident fees."   Miami Dade College, Florida Residency for Tuition Classification - Required Documentation, http://www.mdc.edu/main/flresidency/classification.asp.

## **TUITION DIFFERENTIAL**

58.     Tuition rates for students classified as non-residents are dramatically higher than those for students classified as Florida residents.

59.     At  Miami Dade College, the cost per term in  the two-year associate degree programs is $1,265.76 for residents, compared to $4,523.64 for those classified as non-residents. The cost per term in the four-year baccalaureate programs is $1,399.68 for residents, compared to $6,246.24 for non-residents. See Miami Dade College, Tuition and Fees Academic Year 2011-2012, http://www.mdc.edu/main/academics/tuition.asp. Per year, those classified as non-resident students have to pay $6,515.76 more in tuition and fees toward an associate's degree, and $9,693.12 more toward a bachelor's degree than a resident student.

60.     At Palm Beach State College, resident students in the associate degree programs are charged only $96 per credit hour, whereas those classified as non-residents are charged $349. For 24 credits over the academic year, those classified as non-residents are charged $6,072 more in tuition toward an associate's degree.  Resident students in the bachelor's degree program are charged $113.64 per credit hour, whereas those classified as non-residents are charged $520.90. For 24 credits over the academic year, those classified as non-residents are charged $9,774.24 more in tuition toward a bachelor's degree than those classified as residents.   See Palm Beach State College, Tuition and Fees 2011-2012, http://www.palmbeachstate.edu/TuitionFees.xml.

61.     At Florida International University, the annual tuition and fees total $5,678.02 for Florida residents, compared to $18,077.02 for those classified as non-residents.  Per year, non-resident students are required to pay $12,399 more in tuition and fees.  See Florida International University, Costs: Academic Year 2011-2012, http://admissions.fiu.edu/costs/costs.php.

62.     In short, United States citizen students who reside in Florida but whose parents are undocumented immigrants are charged three to four times as much as other Florida residents for the same education at Florida's public colleges and universities.  As a result, many talented American students are forced either to delay or entirely forego a college education.

## PLAINTIFFS' STATEMENT  OF FACTS

63.     Plaintiffs are United States citizens. They are dependent college students or applicants, under the age of 24, who resided in Florida for more than 12 consecutive months prior to attempting to enroll in college.  Plaintiffs, however, are unable to establish that their parents have lawful immigration status for purposes of tuition residency classification.   As a result, Plaintiffs have been wrongfully classified as non-residents and charged three to four times higher tuition rates  than  other Florida resident  students.   The  increased tuition has  forced Plaintiffs to delay their higher education or to forego it entirely.

64.     Plaintiff Wendy Ruiz is enrolled in her second  year at Miami Dade College. Wendy was classified as a non-resident student for tuition purposes because she could not establish her parents' lawful immigration status.  Because of the dramatic difference in tuition caused by this classification, Wendy is financially unable to take all the credits necessary to complete her associate's degree program within the typical two years.  Instead, she will have to delay her education and take at least three years to complete her degree.

65.     Plaintiff Noel Saucedo is enrolled in his second year at Miami Dade College, where he studies hospitality and tourism.     Noel had received the Migrant Scholarship, which would have covered all the costs of a two-year degree.  However, because Noel was classified as a non-resident student, he was told the scholarship would be reduced to a negligible amount of approximately $900.  As a result of his classification as a non-resident,  Noel has had to pay significantly more than anticipated to attend college and has to work to earn the money to do so.  Noel works at a gas station in order to earn the additional money he needs to pay the non-resident tuition rates.  His entry into the tourism field has been delayed because he cannot afford to complete his degree in two years.

66.     Plaintiff Caroline Roa attempted to enroll at Miami Dade College for the 2011-2012 academic year.  After being accepted, school officials informed her that in order to qualify for in-state tuition, Caroline would need to be an independent student or show proof of her father's legal immigration status.  Caroline, however, is a dependent student who is unable to establish her father's lawful immigration status.  If Caroline were classified as a resident student, she would qualify for the American Dream scholarship, which would cover the cost of her tuition at Miami Dade College entirely.  Without the scholarship, Caroline cannot afford her college education.  As a result of being classified as a non-resident, Caroline was unable to enroll at Miami Dade College.  Instead, she currently works two jobs in the hope of one day being able to afford college.

67.     Plaintiff Kassandra Romero was admitted to Palm Beach State College on August 15, 2011.  After registering for classes, she found she had been charged the non-resident tuition rate, which totaled more than $4,000 for four classes.  She was told by a college employee that she needed to show proof that her father was a legal resident.  Kassandra was unable to provide

such documentation.  As a result of being classified as a non-resident, Kassandra was forced to withdraw from school.

68.     Plaintiff Janeth America Perez attempted to enroll at Miami Dade College prior to the August 22, 2011, school start date.  Janeth submitted her application and request for financial aid.  She enrolled, but was forced to withdraw before the start of classes because the non-resident tuition costs were too high.   She was classified as a non-resident despite having been born in Miami and having lived in Florida her entire life.   As a result of being classified as a non-resident, Janeth was unable to remain at Miami Dade College.  She works full-time at a plant nursery instead.

## CAUSES OF ACTION

## COUNT ONE

## FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE;
## 42 U.S.C. § 1983

69.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

70.     The Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

71.     Defendants' policy and practice of classifying dependent United States citizen students who reside in Florida as "non-residents" based on their parents' federal immigration status denies these United States citizens equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

72.     Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

## COUNT TWO

## SUPREMACY CLAUSE;
### 42 U.S.C. § 1983

73.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

74.     The Supremacy Clause, Article VI, Section 2, of the United States Constitution, provides that federal law is "the supreme law of the land." The Clause states: This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.

75.     The Fourteenth Amendment to the Constitution of the United States guarantees the Plaintiffs the right to be citizens of the United States "and of the State wherein they reside." U.S. Const. amend. XIV.

76.     Defendants' policy and practice of classifying dependent United States citizen students who reside in Florida as "non-residents" based on their parents' federal immigration status violates the Supremacy Clause. Defendants' policy and practice constitutes a regulation of immigration and citizenship, thereby usurping powers that are exclusively vested in the federal government.

77.     Defendants also violate the Supremacy Clause by imposing burdens on United States citizens that are contrary to federal law.  Defendants' policy and practice conflicts with federal law and seeks to regulate the field of immigration and citizenship.

78.     Plaintiffs seek relief under the United States Constitution, and as an action pursuant to 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing, Plaintiffs request that the Court:

a.     Assume jurisdiction over this matter;

b.     Certify this matter as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) with the class as defined above and with the below signed counsel appointed as class counsel;

c.     Declare that the challenged policy and practice of classifying dependent United States citizen students who reside in Florida as non-residents for tuition purposes solely because of their parents' immigration status violates the United States Constitution;

d.     Enjoin Defendants from requiring that dependent United States citizen students who reside in Florida provide proof of their parents' immigration status for tuition purposes;

e.     Grant Plaintiffs the reasonable costs of suit and reasonable attorneys' fees and other expenses pursuant to 42 U.S.C. § 1988; and

f.     Grant such other relief as this Court may deem just and proper.

**RESPECTFULLY SUBMITTED** this 24th day of February, 2012.

SOUTHERN POVERTY LAW CENTER

By: /s/ Miriam Haskell

Miriam Haskell

Tania Galloni (Fla. Bar. No. 619221)
Miriam Haskell (Fla. Bar. No. 69033)
SOUTHERN POVERTY LAW CENTER
4770 Biscayne Blvd., Suite 760
Miami, Florida 33137
T:  (786) 347-2056
F:  (786) 238-2949
*tania.galloni@splcenter.org*
*miriam.haskell@splcenter.org*

Jerri Katzerman*
Maria Morris*
SOUTHERN POVERTY LAW CENTER
400 Washington Ave.
Montgomery, Alabama 36104
T:  (334) 956-8200
F:  (334) 956-8481
*jerri.katzerman@splcenter.org*
*maria.morris@splcenter.org*
*Admitted *pro hac vice*

Attorneys for Plaintiffs